LARS T. FULLER (No. 141270)
THE FULLER LAW FIRM, P.C.
60 No. Keeble Ave.
San Jose, CA 95126
Telephone: (408)295-5595
Facsimile: (408) 295-9852

Attorneys for Debtor

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| In re: SARAMINO DEVELOPMENT, LLC, Debtor | Case No.: 12-50361-CN |
| --- | --- |
| | **REPLY TO OPPOSITION OF CREDITOR WASSERBURGER TO APPLICATION FOR COMPENSATION** |
| | CHAPTER 7 |
| | Date: Sept 17, 2013<br>Time: 2:00 p.m.<br>Court: 3070 |

1

REPLY TO OPPOSITION OF CREDITOR WASSERBURGER TO APPLICATION FOR COMPENSATION

Case: 12-50361 Doc# 112 Filed: 09/12/13 Entered: 09/12/13 14:32:31 Page 1 of 9

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

## Table of Contents

**I. SUMMARY OF ARGUMENT** ... 3

**II. FACTUAL BACKGROUND** ... 3

**III. FULLER LAW FIRM'S REPRESENTATION WAS NECESSITATED BY EXIGENT CIRCUMSTANCES** ... 3

**IV. WHEN FULLER LAW FIRM AGREED TO REPRESENT DEBTOR, NO ACTUAL CONFLICT OF INTEREST EXISTED BETWEEN DEBTOR AND THE GUARANTORS** ... 4

**V. UNLIKE *IN RE: B.E.S. CONCRETE*, IN THE INSTANT CASE, A POTENTIAL CONFLICT BETWEEN DEBTOR AND GUARANTORS WAS NOT FORESEEABLE** ... 4

**VI. THROUGHOUT FULLER LAW FIRM'S REPRESENTATION THERE WAS NEVER ANY ACTUAL CONFLICT OF INTEREST BETWEEN DEBTOR AND ITS PRINCIPALS** ... 5

**VII. *IN RE: B.E.S. CONCRETE* IS A NON-BINDING CASE WITH A SUBSTANTIVELY DISTINGUISHABLE FACT PATTERN** ... 5

**VIII. THE LEGAL EXPENSES WERE BROUGHT ABOUT BY WASSERBURGERS' PRIOR COUNSEL** ... 6

**IX. FULLER LAW FIRM'S BILLS ARE REASONABLE, DETAILED, NECESSARY, AND RELATE ONLY TO REPRESENTATION OF THE ESTATE** ... 7

**X. THIS COURT HAS BROAD DISCRETION TO AWARD FEES AND COSTS EVEN IF A QUESTION REGARDING CONFLICT EXISTS** ... 8

**I. CONCLUSION** ... 9

Case: 12-50361 Doc# 112 Filed: 09/12/13 Entered: 09/12/13 14:32:31 Page 2 of 9

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

## I. SUMMARY OF ARGUMENT

When The Fuller Law Firm, P.C. (hereinafter "Fuller Law Firm") stepped in, no actual conflict existed, and no potential conflict was foreseeable. Throughout the representation, no actual conflict ever emerged.

The increase in attorney fees, as well as the foreclosure and conversion to chapter 7 were all caused by Wasserburgers' prior counsel.

Fuller Law Firm's fees were reasonable, necessary, and well documented.

## II. FACTUAL BACKGROUND

Fuller Law Firm was forced to act quickly to save Debtor and its principals. Perhaps due to the exigent circumstances, Fuller Law Firm did not foresee any potential conflict of interest between Debtor and its principals, and did not believe the principals were "interested persons" for disclosure purposes.

However, Fuller Law Firm diligently represented Debtor in negotiations with its largest creditor, California Bank & Trust. Fuller Law Firm prepared a thorough plan and disclosure statement. Fuller Law Firm also defended Debtor in an AP filed by Wasserburgers, and attended a full day mediation before the Hon. Judge Newsome.

## III. FULLER LAW FIRM'S REPRESENTATION WAS NECESSITATED BY EXIGENT CIRCUMSTANCES

In late January 2012, Debtor had already unsuccessfully filed one bankruptcy. The second (instant) bankruptcy was filed as a skeleton petition on January 18, 2013 by debtor *pro se*. On January 19th, the court had issued an Order and Notice Re: Failure to File Schedules. Counsel had until February 3rd to substitute into the case and file complete schedules.

Simultaneously, a State Court lawsuit filed by Debtor and its principals was in disarray. Plaintiffs had sought a TRO against foreclosure, but were denied. Defendant California Bank & Trust, ably represented by a Wilshire Boulevard law firm, had filed a cross-complaint and served

comprehensive discovery. Responses were due. Counsel for plaintiffs had neither taken a step towards responding to the discovery, nor met and conferred or sought any extensions. Separately, an OSC had been issued due to his failure to appear at a CMC. A hearing on the OSC was calendared for February 9, 2012.

There was serious risk of judgment against debtor's principals, which could have adverse *res judicata* consequences on Debtor.

There was no time to waste. Debtor needed immediate representation.

Fuller Law Firm stepped in, filed comprehensive schedules in the bankruptcy court, and promptly proposed a thorough reorganization plan and disclosure statement. When it became evident that debtor would not be able to obtain the necessary unsecured votes to confirm a plan, attention shifted to negotiating with California Bank & Trust.

In State Court, Fuller Law Firm met and conferred regarding discovery, addressed the OSC, then responded to and also served discovery.

## IV. WHEN FULLER LAW FIRM AGREED TO REPRESENT DEBTOR, NO ACTUAL CONFLICT OF INTEREST EXISTED BETWEEN DEBTOR AND THE GUARANTORS

When Fuller Law Firm agreed to represent Debtor, the guarantors had no claim against Debtor. Guarantors and Debtors' interests were fully aligned: all parties wanted to avoid foreclosure, and to negotiate a settlement with California Bank & Trust.

## V. UNLIKE *IN RE: B.E.S. CONCRETE*, IN THE INSTANT CASE, A POTENTIAL CONFLICT BETWEEN DEBTOR AND GUARANTORS WAS NOT FORESEEABLE

As discussed, when Fuller Law firm stepped in, the interests of Debtor and its principals were fully aligned. Unlike *B.E.S. Concrete*, Debtor here was a single-asset real estate case. The only way an actual conflict could arise was if the subject property was foreclosed with a deficiency balance, and yet, somehow, unencumbered assets existed, giving Debtor's principals a meaningful indemnification claim against the estate.

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

Case: 12-50361 Doc# 112 Filed: 09/12/13 Entered: 09/12/13 14:32:31 Page 4 of 9

In a single asset real estate case, this seemed like an impossible contradiction. How could a foreclosure result in a deficiency, yet funds be available to general unsecured creditors? Any funds in the DIP account would, by definition, be cash collateral to the secured creditors.

It was completely unforeseeable that a post-petition creditor would appear, disburse large sums of legally undefined nature to the estate, then commit financial murder-suicide by forcing foreclosure and conversion to chapter 7.

That this surreal series of events actually did occur is due to Wasserburgers' prior counsel's bizarre conduct, as discussed below.

## VI. THROUGHOUT FULLER LAW FIRM'S REPRESENTATION THERE WAS NEVER ANY ACTUAL CONFLICT OF INTEREST BETWEEN DEBTOR AND ITS PRINCIPALS

As discussed above, when Fuller Law firm stepped in, the interests of Debtor and its principals were fully aligned and a potential conflict between Debtor and its principals seemed to be an impossibility.

Throughout Fuller Law Firm's representation, no conflict existed between Debtor and its principals. Every effort was made to minimize estate expenses and to seek the highest sale price for the estate assets. A threat of an indemnification claim by the principals against the estate never appeared on the horizon.

## VII. *IN RE: B.E.S. CONCRETE* IS A NON-BINDING CASE WITH A SUBSTANTIVELY DISTINGUISHABLE FACT PATTERN

The Wasserburgers cite *In re B.E.S. Concrete Products, Inc.* 93 BR 229 (1988). This is an Eastern District Bankruptcy Case, and therefore, not binding here.

Additionally, in *B.E S. Concrete* the court found that the conflict caused harm to the estate. This was a hotly litigated case. "the parties on each side have been intractable and belligerent."

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

Case: 12-50361 Doc# 112 Filed: 09/12/13 Entered: 09/12/13 14:32:31 Page 5 of 9

*B.E.S Concrete* at 237. "Holy war ensued" *Id* at 230. "Hard feelings, exacerbated by more than the usual amount of acrimony, prevail." *Ibid.*

In this environment, the court found that litigation expenses to the estate were increased by the dual representation. "If the estate had been represented by counsel who owed primary allegiance to the estate, such counsel might have had a leavening effect that would have consumed far less effort." *Id* at 237.

Here, as discussed below, there is no dispute that the attorney expenses to the estate were not exacerbated by the dual representation. Rather, it was caused by Wasserburgers' prior counsel.

## VIII. <u>THE LEGAL EXPENSES WERE BROUGHT ABOUT BY WASSERBURGERS' PRIOR COUNSEL</u>

The Wasserburgers' prior counsel was Mr. Stephen Goldblatt.

A PACER search indicates Mr. Goldblatt, who is bankrupt himself, had no prior bankruptcy experience in this district before entering this case.

Other searches indicate he is permanently disbarred in Missouri and was suspended from practice in California. At one point, the United States District Court for the Southern District of Illinois relieved Mr. Goldblatt as attorney of record for all his clients, not "in a disciplinary role but pursuant to (the court's) inherent authority to protect the right of (Mr. Goldblatt's clients)." Mr. Goldblatt has conceded that he has been in need of certain medications and failure to receive appropriate levels of medication has caused "instability in his pleadings."

Prior to Mr. Goldblatt's entry into this case, Fuller Law Firm had reached a compromise with California Bank & Trust, the estate's largest creditor. The entire case and dispute were a blink of an eye away from resolution.

Then appeared Mr. Goldblatt, single-handedly derailing everything.

"A fool throws a rock into a well. Forty wise men can't retrieve it"

- Oriental proverb

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

Mr. Goldblatt called Debtor's counsel periodically, belligerently threatening litigation, and hanging up repeatedly. He failed to appear at a promised mediation session. He then filed an AP, in violation of the contract's mediation and arbitration clause. In the AP, he sued the wrong person (Rubina Ahmed) and sought an advisory opinion of non-dischargeability as to at least one individual who was not in bankruptcy. The AP sought to enforce a lease-to-own agreement, which Debtor did not oppose. Then Mr. Goldblatt changed his mind and sought a better deal. Then, even as he was negotiating with Debtor's counsel, he went behind Debtor's back and tried to purchase the note from California Bank & Trust.

Counsel for Debtor and counsel for California Bank and Trust tried repeatedly to reason with Mr. Goldblatt. A full day mediation session was conducted with the assistance of the Hon. Judge Newsome (Ret.) who proved to be one of the most thoroughly-prepared and skillful mediators undersigned counsel has ever had the privilege of working with.

But this was all for naught. A resolution could not be had.

California Bank & Trust, having waited enough, moved for and obtained relief, whereupon the chapter 11 case became moot.

Wasserburgers are arguing that counsel's fees are unreasonable, but they neglect to mention that their own counsel prematurely filed the AP, necessitating an expensive mediation, and ultimately, a foreclosure. Nor do the Wasserburgers admit that, hoping to buy the property at a steep discount, they breached their agreement with Debtor and oscillated between renegotiating the agreement and dealing directly with California Bank & Trust.

## IX. FULLER LAW FIRM'S BILLS ARE REASONABLE, DETAILED, NECESSARY, AND RELATE ONLY TO REPRESENTATION OF THE ESTATE

Fuller Law Firm has submitted a meticulous bill. All services relating to the State Court action have been excluded. For example, despite having provided substantial services regarding discovery in State Court, most of which was ultimately beneficial to the estate, Fuller Law Firm, PC, decided not to seek reimbursement from the estate for those services.

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

Case: 12-50361 Doc# 112 Filed: 09/12/13 Entered: 09/12/13 14:32:31 Page 7 of 9

Fuller Law Firm's bill is broken down between AP, negotiations, IDI, Insurance issues, Main bankruptcy case, Mediation, Plan and Disclosure, Relief From Stay, and Tenant Negotiations. There is no time billed for discovery or CMC appearances in State Court. That will be billed separately to the principals.

Attached to the Declaration of Counsel are 17 pages of detailed spreadsheets, breaking down the bills by task, project, and attorney.

Wasserburgers' conclusory assertion that the services are "woefully not documented" is puzzlingly false.

## X. THIS COURT HAS BROAD DISCRETION TO AWARD FEES AND COSTS EVEN IF A QUESTION REGARDING CONFLICT EXISTS

As discussed above, the Wasserburgers' citation to an out of District reorganization case has no bearing to the instant single-asset real estate case.

However, there is precedent authorizing this court to award attorney fees even in light of questions regarding potential conflict and/or inadvertent failures to disclose representation of interested parties.

For example, in *In re Mohsen*, N. Dist. CA Case No. 05-50662-ASW, the court had occasion to disqualify Debtor's chapter 11 counsel, Mr. David S. Levin, and order disgorgement $85,047 in attorney fees. Mr. Levin represented Mr. Mohsen, as well as Advanced Information Management-Egypt ("AIM.") Mr. Mohsen was a creditor of AIM. More interestingly, while representing Mr. Mohsen, Mr. Levin filed a claim on behalf of AIM in the bankruptcy matter of *In re Aptix*. Additionally, Mr. Mohsen's son was also a creditor of Aptix.

Upon careful review, the court did not disqualify Mr. Levin, and did not order disgorgement of attorney fees earned in representing Mr. Mohsen's estate. However, since a contingency fee of approximately $4,000 earned in collecting a claim in the Aptix estate was to the detriment of the Mohsen estate, those fees were ordered returned to the Mohsen estate.

Here, counsel has not earned any fees that have been to the detriment of the instant estate.

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

Case: 12-50361 Doc# 112 Filed: 09/12/13 Entered: 09/12/13 14:32:31 Page 8 of 9

Similarly, in *In re Song*, BAP Nos. CC-07-1137-DMoPa CC-07-1160-DMoPa (B.A.P. 9th Cir., 2008) the 9th Circuit Bankruptcy Appellate Panel was asked to review a $2.5 million contingency fee awarded to counsel who successfully represented the trustee in an insurance bad faith claim after representing Debtor in the same claim. Debtor contended that (1) counsel was not a disinterested person when he represented the trustee after having represented Debtor (2) an actual, and not potential, conflict of interest existed: the trustee sought an award only to pay creditors of estate, whereas Debtor sought as large a settlement as possible, and (3) that counsel had failed to properly disclose prior connections to Debtor.

The appellate panel found that (1) counsel retained pursuant to §327(e) did not need to be disinterested, that (2) no actual conflict existed, and (3) the bankruptcy court properly exercised discretion to excuse counsel's failure to disclose other representation, pursuant to *First Interstate Bank, NA v. CIC Inv. Corp. (In re CIC Inv. Corp.)*, 175 B.R. 52 (9th Cir. BAP 1994), *Movitz v. Baker (In re Triple Star Welding, Inc.)*, 324 B.R. 778, 788 (9th Cir. BAP 2005); *Film Ventures Int'l, Inc. v. Asher (In re Film Ventures Int'l, Inc.)*, 75 B.R. 250, 252 (9th Cir. BAP 1987).

## I. CONCLUSION

No actual conflict ever existed between Debtor and its principals. Any such conflict was unforeseeable. The inadvertent failure to disclose representation of interested persons was excusable.

Dated: September ___ 2013

THE FULLER LAW FIRM, P.C.

By: */s/ Lars T. Fuller*__
LARS T. FULLER
Attorney for Debtor

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

Case: 12-50361 Doc# 112 Filed: 09/12/13 Entered: 09/12/13 14:32:31 Page 9 of 9